DREW, J.,
concurring in the Opinion on Rehearing Grant.
The state has conceded and the trial court has rendered judgment that Glenn Ford should have never been found guilty of first degree murder, and should never have been held on death row.
In this civil case, the trial court ruled that Mr. Ford was not entitled to compensation, finding that he failed to prove by clear and convincing evidence that he did not commit multiple felonies emanating directly from the facts of this robbery/murder. The burden here was on Ford, not the state.
The trial court produced sound and organized reasons for judgment, which I annex and adopt as a part of this concurrence. The court’s hard work, diligence, and fairness are noted and appreciated.
The compensation case was submitted to the court on the original 35-volume record of the criminal case, together with arguments of and briefing by counsel.
There was no testimony held at the hearing. Ford was alive, but sick.[1]
This record reveals that the defendant committed at least two felonies arising from the facts of the robbery/murder: illegal possession of stolen things and accessory after the fact to first degree murder. Besides these two crimes, the compensation court also found that Ford was a principal to the crime of armed robbery.[2]
12As there are only two parties to crimes in Louisiana, then it is accurate to say that the trial court found that Ford committed armed robbery.[3] Even if not present at the moment of a crime, a person can be convicted of that crime, if otherwise involved as a principal.[4]
This finding leads down a road not taken by either set of lawyers. Consider:
• In 1983, armed robbery was listed as an enumerated (listed) felony for a type of second degree murder that occurs when a victim dies during a robbery. It is often called “second degree (felony) murder.” La. R.S. 14:30.1(A)(2).
• In 1983, if a death occurred during an armed robbery, each principal to the robbery would be guilty of second degree murder, even with no proof of the specific intent to kill or to inflict great bodily harm.[5]
*1258 • In 1983, second degree murder was punishable by a mandatory life sentence in the-penitentiary, with no hope ■ for parole — admittedly not death row, but nonetheless a hard1 labor sentence for life.
What this means is that Ford arguably committed second degree murder arising out of the facts. of this case. Had he actually been convicted of that crime, in a petit jury trial conducted in accordance with the Sixth Amendment to the United States Constitution, Ford would have never, been released from prison.
The civil trial court’s denial of compensation is certainly correct under the expansive definition of facts[6] subject to review under La. R.S. 15:572.8.
• IsThe trial court concluded that' Ford was a principal in an armed robbery, a violent and unprovoked crime that resulted in the execution of a man who had been his employer. Glenn Ford’s coconspirators murdered an innocent man named Isadore Rozeman.
With respect, and with these comments, I concur with the Opinion on Réhearing Grant.
GARRETT, J., concurs in the result on rehearing.

Ji.

APPENDIX
IN RE GLEN FORD
DOCKET #126,005 — SECTION 1
FIRST JUDICIAL DISTRICT COURT CADDO PARISH, LOUISIANA
FILED MAR'27 2015
/s/ .
DEPUTY CLERK OF COURT
RULING ON PETITION FOR COMPENSATION

FOR WRONGFUL CONVICTION AND IMPRISONMENT

On March 14, 201,4, Judge Ramona Emanuel signed an order granting the State of Louisiana’s (the State) Motion to vacate the conviction and sentence of Glen Ford and ordered him to be “unconditionally released from the custody of the Louisiana Department of Corrections” (Exhibit 1). The State’s motion explained' that “credible evidence” had become known to First Assistant District Attorney, E)ale Cox, and Assistant District Attorney, Catherine Es-topinal, in'late'2013 which “supported] a finding that Glen Ford was néither present at, nor a participant in, the’ robbery and múrder of Isadore Rozeman” (Exhibit 2). The following day, March 11, 2014, after spending nearly thirty- (30) years on death row at the Louisiana State Penitentiary at Angola, Glen Ford walked out of prison (Exhibit 3). On June 10, 2014, the State dropped all charges against Mr. Ford (Exhibit 4). , ,
|2On December 2,2014, Glen Ford filed a Petition for' Compensation 'for Wrongful Conviction and Imprisonment Mr. Ford asserts that he is entitled to compensation pursuant to La. R.S. 15:572.8 because; (1), his conviction has been reversed or vacated; and (2), he is factually innocent of the crime for which he was convicted.' • ■
*1259 On December 22, 2014, the State, through the Assistant Attorney General, opposed Mr. Ford’s Petition for Compensation and claims Mr. Ford was not factually innocent pursuant to La. R.S. 15:572.8(B).
The matter was re-allotted from Section 4 to Section 1 as required by law. A hearing was held on February 5, 2015. Supplemental pleadings were "filed by Mr. Ford on February 20, 2015, and the Court was notified on March 2, 2015 by Mr. Ford and on March 4, 2015 by the State, that neither intended to file additional pleadings, and the Petition for Compensation was thereby submitted to the Court for a decision.
La. R.S. 15:572.8 provides in pertinent part:
A. A Petitioner is entitled to compensation in accordance with this Section if he has served in whole or in part a sentence of imprisonment under the laws of this State for a crime for which he was convicted and:
(1) The conviction of the petitioner has been reversed or vacated; and
(2) The Petitioner has proven by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted.
. B. For purposes of this Section, “factual innocence” means that the Petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction.
In any Petition for Compensation for Wrongful Conviction, the Petitioner has the burden of proof and he or she [amust prove the elements of La. R.S. 15:572.8(A) and (B) by dear and convincing evidence. Essentially, Mr. Ford must prove by clear and convincing- evidence that; (1) his conviction- was vacated; and (2) he was factually innocent of the crime he was convicted of and he did not commit any crimes based on the same set of facts.
There is no dispute that Mr. Ford has satisfied the requirements of -La. R.S. 15:572.8(A)(1). Mr. Ford has proved that he was convicted of a crime and that corn viction was reversed, or vacated. .A dispute does exist however, concerning the issue of Mr. Ford’s factual innocence as set forth in La. R.S. 15:572.8(A)(2) and the definition of the term “factual innocence” contained in 15.572.8(B).
The inquiry for the Court is whether Mr. Ford committed any crime based on the same set of facts used in his original conviction. If the Court determines Mr. Ford did in fact commit a crime based on the same set of facts used' in his original conviction, compensation would' not be owed. If the Court does not find that-Mr. Ford committed a crime based on the same set of facts used in his original conviction, the Court would then be obligated to grant the Petition for Compensation and would be required to calculate the amount owed.
The State asserts- that Mr. Ford-committed-two crimes- based upon the same set of facts used in his original conviction:
(1) Illegal Possession of Stolen Things; and
(2) Accessory after the fact to an Armed Robbery.
|4In order to decide if these crimes were committed by Mr. Ford, the Court must review the elements of those crimes . as enacted in 1983, the date of the alleged offenses.
At the time of the offense (1983), La. R.S. 14:69(A) provided as follows:
*1260 A, Illegal possession of stolen things is the intentional possessing, procuring, receiving or conceding of anything of value which has been the subject of any robbery or theft, under circumstances which indicate the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
La. R.S. 14:25 defines accessory after the fact, and it has remained unchanged since 1942. It provides in pertinent part:
An accessory after the fact is any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground, to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction or punishment
In 1983, armed robbery was defined in La. R.S. 14:64 as follows:
Armed robbery is the theft of anything of value from the person of another, or which is in the immediate control of another by use of force or intimidation while armed with a dangerous weapon.
In reviewing the suit record, the Court concludes the following facts were proven at trial:
(1) Mr. Ford pawned items stolen from Mr. Rozeman on the day of the murder (R. Vol. 9, page 1914);
(2) Detective Don Ashley identified a pawn slip from International Pawn Shop signed by Glen Ford on the day of the murder, and dated November 5, 1983 at 5:00 p.m. (R. Vol. 9, page 1914);
L(3) A pawn shop employee, Richard Moore, identified Mr. Ford in Court as the person who sold the items taken from Mr. Rozeman’s store (R. Vol. 9, page 1995);
(4) Robert Foley, a forensic document examiner, confirmed that Mr. Ford signed the pawn slip in question. (R Vol. 9, page 1964);
(5) Detective Gary Alderman and Detective Don Ashley recovered items from Mr. Ford’s room at the Castle Hotel that were stolen from Mr. Rozeman’s store pursuant to a search warrant (R. Vol. 9, pages 1921-1926; R. Vol. 9, pages 1937-1939);
(6) Detective Don Ashley recovered shirt or tuxedo studs from the luggage belonging to Henry Robinson that matched studs recovered from Mr. Ford’s room at the Castle Hotel pursuant to a search warrant. The studs were gold and had the same markings. The initials were “WHM,” and there were markings for ten carat gold. (R. Vol. 9, pages 1941-1943);
(7) On the day of the robbery and murder, Mr. Ford had not paid his room rent. The landlord questioned Mr. Ford about a payment between 3:30 and 4:00 p.m. Mr. Ford told her he would get back with her later that day. Mr. Ford paid the rent around 5:30 or 6:00 p.m. (R. Vol. 9, page 1975).
(8) Glen Ford saw “O.B.” on the evening of November 5, 1983 around dusk. “O.B.” told Mr. Ford that if he would sell a gun for him, “O.B.” would give Mr. Ford some money from the sale. Mr. Ford tried to line up two buyers for the gun on Sprague Street. “O.B.” never gave Mr. Ford the gun. (R. Vol. 9, pages 2069-2070);
(9) On the day after the Rozeman robbery and murder, -Glen Ford was identified as a suspect and was interviewed by police officers. He gave a *1261 verbal statement about what he did on the day of the robbery/murder. He failed to tell police he pawned items taken during the robbery/murder and given to him by Henry Robinson in his initial verbal statement. |fiMr. Ford also failed to tell police he had attempted to find a buyer for the .38 caliber gun on November 5, 1983, at Henry Robinson’s request. (R. Vol. 9, pages 2011-2012).
(10) A recorded statement was taken of Mr. Ford shortly after Mr. Ford’s verbal statement was given. This occurred on November 6, 1983. During the first recorded statement, Glen Ford did not indicate at any time that he had pawned jewelry on November 5, 1983. During the initial recorded statement, Mr. Ford did not indicate that he had attempted to line up two buyers for the .38 caliber gun. (R. Vol. 9, page 2013; R. Vol. 9, page 2044; R. Vol. 9, pages 2052-2053) (See also State Exhibit # 88 and # 89);
(11) Later in the day on November 6, 1983, Mr. Ford was questioned again by police. In an oral statement he told police he had tried to see if Alvin White and Clarence Pouncey were interested in buying the .38. He was trying to find a buyer for a gun for “O.B.” (R. Vol. 9, page 2017 and R. Vol. 9, page 2038);
(12) On November 11, 1983, while being detained for possession of stolen things relating to a separate burglary which occurred in October of 1983, Mr. Ford admitted to police that the subject he had been talking about as “O.B.” was indeed Henry Robinson. Mr. Ford also admitted that Henry Robinson asked him to sell the gun and that Henry Robinson was the person who gave him the items he pawned at the pawn shop on November 5, 1983. “O.B.” was never an alias name used by Henry Robinson, but was an attempt by Mr. Ford to deceive police and to hinder their investigation. (R. Vol. 13, page 2771);
(13) Mr. Ford admitted that Henry Robinson told Mr. Ford that he and Jake Robinson were planning on robbing Mr. Rozeman and wanted to know if Mr. Ford would participate in the robbery with them. Mr. Ford told Henry Robinson he was not going to participate in the robbery because Mr. Rozeman had always treated Mr. Ford fair. Henry Robinson told Mr. Ford, “Fine. |7Me and Jake will just do it ourselves.” (R. Vol. 13, page 2773; R. Vol. 2, page 38);
(14) After being asked to participate in the robbery of Mr. Rozeman by Henry Robinson, Mr. Ford went to see Mr. Rozeman and asked him if he had any work he could do. (R. Vol. 2, page 382);
La. R.S. 15:572.8(B) is clear and unambiguous. ' The Court concludes that the clear and unambiguous language of 15:572.8(B) precludes Mr. Ford from receiving compensation. The Court is bound to follow the law as written. It appears clear to the Court that the purpose of 15:572.8(B) is to preclude compensation for those who were involved in the underlying crime such as Mr. Ford was in this case. Mr. Ford knew the robbery was going to take place before it occurred. He was asked to participate and declined. He did nothing to stop it. He did not call authorities before or after. He was not honest with police when first questioned about his involvement. When given the items stolen *1262 from Mr. Rozeman’s store by Henry Robinson, he went to a pawn shop and sold the items. The evidence of Mr. Ford’s involvement in the underlying crime is abundant and cannot be ignored or overlooked. It is clear to the Court that the elements of the crime possession of stolen things have been established. Moreover, it is clear to the Court that the elements of accessory after the fact to armed robbery have . been established. Mr. Ford had good reason to know the items given to him by Mr. Robinson on November 5,1983 were stolen from Mr. Rozeman’s store. Henry Robinson told Mr. Ford he and Jake, were going to rob Mr. Rozeman earlier that day. After Henry Robinson | «accomplished what he told Mr. Ford he planned to do, - he asked Mr. Ford to sell items taken during the robbery. It is not believable that Mr. Ford did not know the items he.pawned were stolen. ■ In addition, the sale of the items in his name for Mr. Robinson clearly establishes Mr. Ford was trying to help Mr. Robinson avoid arrest. His willingness and attempts. to find a buyer for the weapon used in the crime for Mr. Robinson also adds to the fact that he was trying to help Mr. Robinson avoid being arrested. Mr. Ford has not proven by clear and convincing evidence that he was factually innocent as defined by La. R.S. 15:572.8(B). He committed many crimes, including possession of stolen goods; accessory after the fact to armed' robbery; principal to armed robbery; and perhaps obstruction of justice.[1]
After careful thought and reflection, the Court concludes that Mr. Ford was proven to be guilty of lesser crimes and was not an innocent man. While Mr. Ford did not have the blood of Isadore Rozeman on his hands, he did not have clean hands, in that he knew the robbery was going to occur and did nothing; he possessed 'stolen goods; he attempted to destroy evidence by selling item's taken in the robbery, and he attempted to find buyers for the murder weapon used by the people he'implicated in the murder and armed 1 jobbery and he hindered the investigation by police by giving a false name for Henry Robinson. These facts were proven at the trial and are supported by the record. During the original trial, Mr. Ford’s own attorney referred to him as a “fence” in his closing argument, stating, “we submit that at least oné plausible explanation [of innocence] is that Ford was a helpless fence, who possessed stolen items without knowledge of the murder.” R. Vol. II, 2319.[2]
For the reasons stated above, the Petition for Compensation for Wrongful Conviction and Imprisonment is hereby DENIED.
Signed this 27th day of March, 2015, in Shreveport, Caddo Parish, Louisiana.
/s/
Honorable Katherine Clark Dorroh
District Judge
First Judicial District Court ,
DISTRIBUTION: ■
Mr. Colin Clark
Office of Louisiana Attorney General, Criminal Division
PO Box 94005
*1263 Baton Rouge, LA 70804
Ms. Kristen Wenstrom
Innocence Project New Orleans
4051 Ulloa Street
New Orleans, LA 70119
Mr. Charles R. Scott
Caddo Parish District Attorney
501 Texas Street
Shreveport, LÁ 71101

. This information was a comment of counsel, who waived Ford’s presence at the hearing, because of his illness. His testimony was not perpetuated.

. There is a. wealth of information in the trial record that amply supports this conclusion, including statements made by the defendant as to his activities on the day of the murder. Of particular value in assessing the culpability of Ford are his statements made to Detective Gary Pittman, wherein Ford admitted being at the victim’s door earlier that day. Everything said by the defendant can be examined in this proceeding, whether or not admitted into evidence at the original petit jury trial. La. R.S. 15:572.8(D).

. Principals and Accessories after the fact. La. R.S. 14:23.

. See La. R.S. 14:24. Principals.

. The petit jury was charged as to the elements of felony first degree murder and felony second degree murder. Second degree murder was and is a lesser included offense and a responsive verdict to first degree murder. The only difference in the two murders is whether it is proven or not proven that the defendant had the specific intent to kill or inflict great bodily harm.

. The compensation trial court was not limited to just what was admitted into evidence at the original trial. R.S. 15:572.8(D) provides, in pertinent part, that the "court may consider any relevant evidence regardless of whether it was admissible in, or excluded from, the criminal trial in which the petitioner was convicted.” In this compensation' inquiry, Louisiana state law does not limit the court’s inquiry to only evidence that was admitted or what was actually proven at the original trial. Any relevant evidence is part of the compensation inquiry.

. Under our current law, 14:130.1(B) provides, whoever commits the crime of obstruction of justice shall be subject to the following penalties:
(1) When the obstruction of justice involves a criminal proceeding in which a sentence of death or life imprisonment may be imposed, the offender shall be fined not more than one hundred thousand dollars, imprisoned for not more than forty years at hard labor, or both.

. See also R. Vol. S, page 1183, "Glen Ford was the unfortunate fence who received stolen goods on the day of the murder.”